EZEQUIELA MALDONADO DE ARCE ET AL., Plaintiffs and Appellees, *v.* MUNICIPALITY OF PONCE, Defendant and Appellant.

No. 4215. Argued January 10, 1928.—Decided February 28, 1929.

*Fernando B. Fornaris* for the appellant. *Felipe Colón Díaz* for the appellees.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Defendant appeals from a judgment for damages arising out of a breach of contract, and says that the court below erred in finding that the breach complained of had been established by the evidence.

In July, 1913, the municipality of Ponce sold a vault in the municipal cemetery to the widow of Joaquín Arce. The vault was described in a certificate of sale issued to the purchaser, and in an entry or entries upon the record kept by the municipality, as number 173, left *ladera,* row first. In 1925 the municipality sold to Gil Velázquez vault No. 173, *ladera* first, row right. An entry in the municipal registry indicates that in October, 1913, the municipality leased to Lila Mayoral de Barnés for a term of five years vault No. 173, vertical, row third. Some of the testimony for defendant tended to show that this vault was the one sold to Velázquez in 1925. The "vertical" vaults and those described as *de ladera* are located in different parts of the cemetery.

When Velázquez went to make his purchase an employee of the Municipal Treasury Department made a memorandum

of several vaults from which he might choose. Velázquez then proceeded to the cemetery and selected a vault which the caretaker pointed out to him as one of those listed in the memorandum as available. The vault so selected was No. 173. Velázquez did not know, either at the time of his visit to the cemetery or at the time of the trial, whether the vault was "vertical" or "*de ladera.*"

Later on the same day the vault selected by Velázquez was opened by the caretaker, or pursuant to orders given by him, and the remains of Joaquín Arce were removed therefrom.

At least one witness for plaintiffs testified on direct examination that the body of Arce had been placed in vault No. 173, row first, "*ladera izquierda.*" Another witness for plaintiffs testified that he had painted the Arce vault and renewed the inscription thereon some six months prior to the removal of the remains. On cross-examination of this witness counsel for defendant elicited the further information that the vault painted by him was No. 173, row first, "*ladera izquierda.*" The mason who had sealed the Velázquez vault in 1925, after the removal of the Arce remains and the interment of another body therein, said, as a witness for defendant, that he did not remember the number of the vault but that it was in the first row of those "*en ladera.*"

The certificate of sale was issued to Velázquez, and the corresponding entries with reference thereto were made, several weeks after the opening of the Arce vault and the interment therein of another body. There is nothing to show that there were any duplicate numbers or duplicate series of numbers among the vaults known as "*de ladera,*" or that these vaults were grouped into sections designated by letters, or by numbers, or otherwise. The testimony for defendant goes only to the question as to whether or not the vault delivered to Velázquez was the one sold or intended to be sold to him. We do not deem it necessary to determine that question at this time.

The gist of the argument for appellant is that the evidence for plaintiffs does not establish the fact of a double sale. More specifically the contention is that the evidence does not sufficiently identify the vault sold to Velázquez as the one previously purchased by plaintiffs. This, of course, assumes the necessity of showing a double transfer as a basis of the right to recover damages. That, however, does not appear to have been the theory of the complaint nor of the court below. As a matter of fact, the sale to Velázquez is not even mentioned, either in the complaint or in the findings of the trial judge.

The gravamen of the action was the violation by defendant of the sepulchre previously sold and delivered to plaintiffs. The opening of the vault and the removal of remains therefrom by the municipality was not only a tort but also a breach of the contract of sale. The sale to Velázquez was only a link in the chain of events which led up to and explained the breach of the previous contract entered into with plaintiffs. Incidentally it served to connect the municipality with the act of the caretaker and thus to establish a breach of the contract as well as the commission of a tort. What the complaint alleged, and what the district judge found, was in substance that the municipality sold for a consideration of $15 and delivered to plaintiffs a certain vault numbered 173, row first, *"ladera izquierda"* in the Ponce cemetery; that the body of Joaquín Arce was buried in the said vault, and that thereafter the municipality exhumed the remains of the said Arce and permitted the interment of another body in the sepulchre so violated.

There is no room for reasonable doubt as to the correctness of this finding. It does not require reenforcement in order to support the judgment. Any speculation on the part of the trial judge as to whether or not the vault sold or intended to be sold to Velázquez was the same vault previously sold and delivered to plaintiffs, or as to whether or not the vault delivered to Velázquez was the one purchased

by him, or as to whether any mistake in the matter of such delivery was made by the caretaker alone or as the result of the negligence or carelessness of some other employee might have clouded the main issue, but would not have established any satisfactory basis for a different conclusion.

The caretaker in charge of the cemetery died before the date of the trial, and several witnesses were permitted to testify to admissions or statements made by him. The statement, in each instance, was to the effect that the disinterment had been authorized by the municipality. All of this testimony was superfluous.

It was the duty of a certain municipal employee to keep the records and to furnish the data showing what vaults were available whenever a sale was about to be made. The receipts or certificates of sale issued by the municipal treasurer were based upon the data so furnished. This employee testified as a witness for defendant that vault 173 vertical appeared upon the list which he gave Velázquez, and that he gave Velázquez the list in order that the vault selected by him might be prepared by the caretaker. This was done with full knowledge that such preparation involved the removal of human remains. The certificate subsequently issued by the municipal treasurer further described the vault sold to Velázquez as *"ladera primera, fila derecha."*

The testimony of this witness also shows that for purposes of sale or lease vaults previously leased, whether actually occupied or not, were regarded as available. After disinterment the Arce remains and those of one Agustín Burgos were placed in two pine boxes and buried in another part of the cemetery. Neither of the boxes was marked for purposes of identification. The opening of vaults and the removal of human remains were not an uncommon occurrence in the Ponce cemetery. All the circumstances point to the conclusion that the caretaker was acting within the scope of his employment.

That there was no mistake as to the identity of the

remains clearly appears from a permit issued by a local health officer. This permit was introduced in evidence by defendant. It is addressed to the caretaker and authorizes him (Felipe Alvira) to exhume the remains of Joaquín Arce. The name, surname and date of death given in the permit were the name, surname and date of death painted upon the Arce vault as described by the witnesses for plaintiffs.

The exclusion of any admission on the part of the caretaker as to the authorization received by him from the municipality would not have produced a different result in the court below, and the error, if any, in admitting such evidence over the objection of defendant was harmless.

Another contention of appellant is that the court below erred in awarding damages for mental anguish and an independent item of one thousand dollars in no way connected with the question of injury to the feelings.

The theory of appellant is that in an action for breach of contract wherein only nominal damages are involved, and in the absence of physical injury, an award of damages for mental suffering can not be sustained. The argument assumes the necessity of showing that actual expenses were incurred by plaintiffs as a result of the breach, and concludes that, in the absence of such showing, there was no pecuniary loss. Plaintiffs paid $15 for the vault purchased by them in 1913, and Velázquez paid $25 for the same or for a similar vault in 1925. Such amounts, though small, can not be classified as mere nominal damages. Aside from any question of special or sentimental value, plaintiffs were deprived of the possession of property for which they had paid something more than a mere nominal consideration. In the absence of any suggestion to the contrary, we may assume, without holding, that the value of the vault or of the possession thereof in the only way possible to plaintiffs, is a proper measure of damages. Our only purpose at this time is to show that *prima facie* and upon defendant's own theory of the case the pecuniary loss was not merely nominal.

Counsel for appellant expressly concedes that the rule invoked would not apply to an action *ex delicto*. In the case at bar the breach of contract consisted in the commission of a tort. In the circumstances we do not deem it necessary to examine and discuss more or less isolated cases not shown to involve any element of tort nor to represent the modern trend of thought.

The law in this jurisdiction was laid down more than twenty years ago in *Clemadell* v. *Municipality of Juana Díaz*, 14 P.R.R. 608, and we find nothing in the brief for appellant herein that would justify a departure at this time from the doctrine of that case.

We agree with appellant that the total of three thousand dollars awarded to plaintiffs by the court below was excessive. All things considered, we think that nine hundred dollars, in the proportion of six hundred dollars to the widow and one hundred dollars to each of the three children, is enough.

The judgment appealed from will be modified accordingly and, as modified, affirmed.